UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                                :

THE UNITED STATES OF AMERICA,        :

                                                :

                                                :    **MEMORANDUM DECISION AND**

           -against-              :    **ORDER**

                                                  :

DEMETRIUS JOHNSON,             :    20-cr-239 (BMC)

                                                :

                    Defendant.       :

                                                :
-------------------------------------------------------- X

**COGAN**, District Judge.

Defendant Demetrius Johnson has moved under Federal Rule of Criminal Procedure 33 for a new trial. Because he identifies no legal error, and because the Government introduced an outsize slew of evidence against him at trial, his motion is denied.

## BACKGROUND

Johnson is an alleged associate of the Bully Gang, a violent drug-trafficking gang headquartered in Brooklyn. The Government charged him with three crimes related to his involvement with the gang: racketeering, in violation of 18 U.S.C. §§ 1962(c) and 1963; conspiracy to distribute heroin, cocaine, and fentanyl, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(i); and discharging a firearm during and in relation to the drug conspiracy and racketeering, in violation of 18 U.S.C. § 924(c)(1)(A)(i)-(iii). After a two-week trial, a jury returned guilty verdicts on all three counts.

The Government's showing at trial was substantial. Its witness Michael Reid testified that Johnson recruited Reid to run drugs out of a Bully Gang trap house in Maine, that Johnson himself ran drugs out of a similar trap house, and that Johnson attempted to murder Reid after Reid complained about the Bully Gang's failure to pay him. Another witness with inside

knowledge of the Bully Gang corroborated this testimony by identifying Johnson as someone who temporarily managed one of the Bully Gang's trap houses. The jury also saw DNA evidence tying Johnson to the car that fled the scene of the Reid shooting, photos of Johnson at Bully Gang trap houses in Maine, and security footage of Michael Reid's shooter, in which the shooter wore distinctive patterned pants resemblant of a pair worn by Johnson in a social media post.

Particularly relevant here, the Government produced data extracted from a cell phone it claimed was owned by Johnson. The data revealed that Johnson's name was stored in the phone, that the phone contained selfie-style photos and videos of Johnson, and that Johnson's social media and email accounts were linked to the phone. Further establishing that the phone was Johnson's, Reid testified that messages he exchanged with Johnson were contained on the phone.

The Government used the cell data to show Johnson's communications with Bully Gang members, his involvement with the drug trafficking operation, and his visits to various Bully Gang trap houses. Specifically, the Government called a cell-site location expert who testified that the phone travelled to Maine from Brooklyn on several occasions and that the phone was at the site of the Michael Reid shooting. The cell-site expert also testified that the phone travelled to a Bully Gang stash house in New Jersey.

At one of the parties' seemingly countless sidebars, defense counsel objected to the admissibility of the exhibits that relied on data extracted from the cell phone attributed to Johnson. He recognized the parties had stipulated that "digital forensic extraction tools" were used to "forensically extract data" from the phone and to create "a digital copy of data stored on" the phone, that the "process" of creating the digital copy "did not alter the original data stored on" the phone, that the extracted data "was subsequently processed into" a cell report, and that

the "data contained in" the cell report was "in the same condition and state as it was when the report was first generated." But he reminded the Court that Johnson had not stipulated to where, when, or how the Government secured the phone, like he had done with several other phones relevant to the trial. Defense counsel was under the impression that the Government would accordingly need to call a witness to establish the phone's chain of custody and how it was recovered. Unless it did so, counsel argued, it could not authenticate the exhibits under Federal Rule of Evidence 901.

The Court rejected defense counsel's argument and allowed the phone data to come in. Johnson now challenges that decision and argues it entitles him to a new trial.

## DISCUSSION

Federal Rule of Criminal Procedure 33 allows district courts to grant a new trial "if the interest of justice so requires." Tibbs v. Florida, 457 U.S. 31, 38 n.12 (1982). The court must exercise its discretion to award a new trial "sparingly." United States v. McPartland, 81 F.4th 101, 123 (2d Cir. 2023). It should "examine the entire case, take into account all facts and circumstances, and make an objective evaluation, keeping in mind that the ultimate test for such a motion is whether letting a guilty verdict stand would be a manifest injustice." United States v. Landesman, 17 F.4th 298, 330 (2d Cir. 2021). After doing so, it may award a new trial only if there is "a real concern that an innocent person may have been convicted." United States v. Hunter, 32 F.4th 22, 30 (2d Cir. 2022). Importantly, "[c]ourts routinely deny attempts to relitigate already resolved matters under the guise of a Rule 33 motion." United States v. Menendez, 759 F. Supp. 3d 460, 526 (S.D.N.Y. 2024).

Johnson's sole claim of error – that the Court should not have admitted the cell evidence – does not entitle him to a new trial. For starters, the cell data was admissible. To authenticate

evidence, the proponent must "produce evidence sufficient to support a finding that the item is what the proponent claims it is." United States v. Gonzalez, ___ F.4th ___, 2025 WL 2025147, at *6 (2d Cir. July 21, 2025) (quoting Fed. R. Evid. 901(a)). "[A] document may be authenticated by distinctive characteristics of the document itself, such as its 'appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.'" Id. (quoting Fed. R. Evid. 901(b)(4)). "[T]he opposing party remains free to challenge the reliability of the evidence, to minimize its importance, or to argue alternative interpretations of its meaning, but these and similar other challenges go to the weight, not the admissibility, of the evidence." Id.

The stipulation forfeits any argument that the data is not what the Government said it was. Defense counsel agreed that the data was extracted from a cell phone via a reliable process and that it was not somehow altered. The contents of the data, in turn, provided a sufficient basis to conclude that the phone was Johnson's. Again, Johnson's own name was stored in the phone, the photos on the phone appeared to have been taken by Johnson, and Johnson's social media and email accounts were linked to the phone. The reports were thus admissible under Rule 901.

Johnson's attempts to distance himself from the stipulation are as unpersuasive now as they were at trial. Defense counsel very well may have thought that the Government needed to call a witness to authenticate the phone, but for the above reasons, that would have been wrong. There was no need to show that the phone was recovered from defendant when the data does that work for the Government. And the Government was under no obligation to notify the defense that it intended to introduce the exhibits as self-authenticating under Rules 902(13) and (14) because it did not rely on those Rules. See United States v. Lauersen, 348 F.3d 329, 342 (2d Cir. 2003). The Government argued, and the Court ruled, that the stipulation, combined with the data

4

itself, rendered the exhibits sufficiently authentic to introduce at trial under Rule 901, which has no notice requirement.

Of course, Johnson was free to challenge the *reliability* of the cell data. He could have argued that the phone was not in fact his. Or he could have argued that he lent the phone to others, and thus the cell-site location data should not be attributed only to him. What he could not argue, however, is that the data presented to the jury was not properly extracted from *some* phone, which alongside its contents authenticates it.

Moreover, even if the cell-data was improperly admitted, I still would not grant Johnson a new trial due to the sheer volume of evidence against him. There is no "real concern that an innocent person may have been convicted," Hunter, 32 F.4th at 30, because a jury could have returned guilty verdicts based on Reid and Walton's testimony alone, not to mention the surveillance footage, the messages on the other phones, the DNA evidence, and the photos of Johnson in Maine. Tellingly, Johnson's motion does not even attempt to explain why the Court's cell-data ruling would have affected the outcome of the trial.

## CONCLUSION

For these reasons, Johnson's Motion for a New Trial [2260] is denied.

**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
      July 24, 2025